UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ESTEBAN ORTIZ-BRAVO,

Petitioner,

v.

STEVE SMITH, Acting Warden,[1]

Respondent.

Case No. 20-cv-08599-YGR (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Esteban Ortiz-Bravo, a state prisoner currently incarcerated at the Sierra Conservation Center, brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2018 conviction and sentence rendered in the Contra Costa County Superior Court involving sexual offenses against his daughter for over a period of seven years until she reported it in January 2017, when she was 14 years old.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES all claims in the petition for the reasons set forth below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The California Court of Appeal summarized the facts of petitioner's offense as follows. This summary is presumed correct.  *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

> The People charged defendant with thirty-five sexual offenses arising from the molestation of his daughter over a period of about seven years starting when she was seven years old.  More specifically, the information charged the following crimes: oral copulation or sexual penetration of a child 10 years old or younger (Pen. Code, § 288.7, subd. (b),1 counts 1, 3, 7-8, 11-12); sexual intercourse or sodomy with a child 10 years old or younger (§ 288.7, subd. (a), counts 5, 6, 9-10); forcible lewd acts upon a child under the age of 14 (§ 288, subd. (b)(1), counts 2, 4); aggravated sexual assault of a child under the age of 14 by rape (§ 269, subd. (a)(1), counts 13-14, 17-18, 21-22) and by

---

[1] Steve Smith, the current acting warden of the prison where petitioner is incarcerated, has been substituted as respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

oral copulation (§ 269, subd. (a)(4), counts 15-16, 19-20, 23-24); forcible rape of a minor over 14 years old (§ 261, subd. (a)(2), counts 25, 27, and 33); lewd acts on a child who is 14 or 15 years old (§ 288, subd. (c)(1), counts 26, 28, 30, 32, 35); forcible oral copulation of a minor over 14 years old (former § 288a, subd. (c)(2)(C), 2 counts 29, 31); and forcible sexual penetration on a minor who is over 14 years old (§ 289, subd. (a)(1)(C), count 34).  A jury convicted defendant of all counts except counts 5 and 6.  We briefly summarize some of the trial evidence here.

The victim, who was 16 years old at the time of trial, testified that defendant sexually abused her from the time she was around 7 to 14 years old, and the abuse escalated over time.  She testified that when she was seven or eight years old, defendant began touching her vagina and breasts with his hands.  When she was around nine years old, in addition to the foregoing types of touching, he also began making her orally copulate him.  Then, when she was 10 or 11 years old, in addition to touching and oral copulation, he began having sexual intercourse with her and digitally penetrating her.

The last incident of abuse between defendant and the victim—which involved touching, digital penetration, and sexual intercourse— occurred in January 2017, two days before the victim reported the abuse to staff at her school and then the police.  Defendant had initiated the incident by sending the victim text messages asking her to come to his bedroom.  The victim tried to resist, saying she did not want to and she would go to him the next day, but defendant responded by saying things like, "Come right now," "I'm not playing," "[h]urry up or I'll come for you," and "[y]ou want me to get mad?"  The victim testified she ultimately went to him because "[she] knew that it was going to happen whether [she] want[ed] it or not."  Defendant deleted the aforementioned text message conversation from his and the victim's cell phones, but police later recovered the messages.

The same day she reported the abuse, the victim made a pretext call to defendant at the direction of the police.  The People played a recording of that pretext call at trial.  During that pretext call, defendant admitted to sexual misconduct with the victim since she was a "little girl"; said he did not fully penetrate her until about the middle of the prior year; dismissed the victim's objections to engaging in further sexual acts; and strongly pressured her to agree to continue.

Detective Nelly Morris of the Contra Costa County Sheriff's Office testified that she interviewed the victim the day she reported the molestation.  In that interview, the victim reported defendant began touching her and making her orally copulate him when she was seven years old.  The victim also reported that at nine years old, the oral copulation increased in frequency, and they began having sexual intercourse.

A nurse who examined the victim the day she reported the molestation also testified.  The nurse, a Sexual Assault Response Team (SART) coordinator, obtained the victim's history prior to physically examining her.  The victim reported that she was 14 years old, that

United States District Court
Northern District of California

1

2

3

> defendant sexually abused her for the last seven years, and that the last incident occurred two days prior.  After the victim reported her history of sexual intercourse and oral copulation, she told the nurse, "He made me do it every week when I didn't want to."  A physical examination of the victim revealed findings consistent with her engaging in sexual intercourse two days prior.

4

*People v. Ortiz-Bravo*, No. A155917, 2020 WL 2504051, *1-2 (Cal. Ct. App. May 15, 2020).

5

## II.      STATE AND FEDERAL COURT PROCEEDINGS

6

7

The trial court sentenced petitioner to 320 years to life plus 69 years and eight months in state prison.  CT 282-284, 286-291.

8

9

10

11

Petitioner appealed the judgment to the California Court of Appeal.  On May 15, 2020, the state appellate court remanded for the trial court to exercise its discretion to impose concurrent or consecutive sentences on eight of the counts and to strike a probation report fee, but it otherwise affirmed the judgment.  Resp't Ex. 6.

12

13

On June 16, 2020, petitioner filed a petition for review in the California Supreme Court. Resp't Ex. 7

14

15

On August 12, 2020, the California Supreme Court denied a petition for review.  Resp't Ex. 8.

16

17

18

19

20

On December 4, 2020, petitioner filed the instant federal habeas action in this Court.  *See* Dkt. 1.  Petitioner raises the following claims which were similar to the claims from his direct appeal: insufficiency of the evidence, that the trial court erred in imposing consecutive terms on counts 1, 3 and 7-12, and that his sentence amounted to cruel and unusual punishment.  *See id.* at 5.[2]

21

On March 1, 2021, this Court issued an Order to Show Cause.  Dkt. 6.

22

23

24

25

26

On April 26, 2021, respondent filed a motion to dismiss due to ongoing state proceedings, because petitioner had not yet been resentenced, and his state judgment was not final.  Dkt. 7. After an opposition and reply were filed, petitioner filed a request for the court to take judicial notice that he had been resentenced on May 25, 2021.  Dkt. 10.  On that date, the superior court exercised its discretion to impose consecutive sentences on eight of the counts, and reaffirmed the

27

28

---

[2]  Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

previously imposed sentence.  *See* Dkt. 10 at 4.

After confirming that petitioner had been resentenced and had not appealed, respondent sought to withdraw the motion to dismiss, and requested a briefing schedule on the petition.  Dkt. 11.  On November 8, 2021, the Court granted the request to withdraw the motion, and issued a scheduling order.  Dkt. 12.

Thereafter respondent filed an Answer and Memorandum of Points and Authority in Support of Answer.  Dkts. 15, 15-1.  On April 11, 2022, petitioner filed a Traverse.  Dkt. 17  The matter is fully briefed and ripe for adjudication.

## III.  LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, s*ee Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that

United States District Court
Northern District of California

principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. *See Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018); *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Even if constitutional error is established, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).  In applying the above standards on habeas review, the Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  Thus, a federal court will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court precedent. *See Ylst*, 501 U.S. at 804-06; *LaJoie*, 217 F.3d at 669 n.7.  Here, the last reasoned decision is the state appellate court's unpublished disposition issued on May 15, 2020, which relates to the claims raised in the instant petition. *Ortiz-Bravo*, 2020 WL 2504051, at *3-9.

## IV.  DISCUSSION

### A. Sufficiency of the Evidence

Petitioner argues that the evidence was insufficient to support the jury's verdict of guilty on counts 1-4, 13-27, 29, 31, and 33-34.  Dkt. 1 at 5, 19-47.  The Court organizes this claim in the same fashion as the state appellate court: (a) Counts 1 and 3; (b) Counts 22 and 24; and (c) Counts 2, 4, 13 through 25, 27, 29, 31, 33, and 34.  *Ortiz-Bravo*, 2020 WL 2504051, at *3-7.

#### 1.      Applicable Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324.

The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2062 (2012) (per curiam).  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has a due process violation occurred.  *Jackson*, 443 U.S. at 324.

On habeas review, a federal court evaluating the evidence under *Jackson* and *Winship* should take into consideration all of the evidence presented at trial.  *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006) (in a case where both sides have presented evidence, a habeas court need not confine its analysis to evidence presented by the state in its case-in-chief).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume—even if it

United States District Court
Northern District of California

does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, *Jackson* does not permit a federal habeas court to revisit credibility determinations. *See id.* (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrongdoing not a basis for revisiting jury's obvious credibility determination); *see also People v. McGravey*, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).

Under 28 U.S.C. § 2254(d), a federal habeas court applies *Jackson* and *Winship* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas court must ask whether the operative state court decision "reflected an 'unreasonable application' of *Jackson* and *Winship* to the facts of this case." *Id.* at 1275 (citing 28 U.S.C. § 2254(d)(1)).

### 2. Background and Analysis

#### a. Counts 1 and 3

In rejecting petitioner's insufficiency of the evidence claim as to counts 1 and 3, the state appellate court stated as follows:

> Counts 1 and 3 of the information charged defendant with oral copulation or sexual penetration of the victim when she was 10 years old or younger in violation of section 288.7, subdivision (b). The information alleged count 1 occurred when the victim was seven years old, and count 3 when she was eight years old. During closing argument, the prosecutor made clear count 1 concerned conduct that occurred when the victim was seven years old, and count 3 concerned conduct that occurred when the victim was eight years old.[FN 3]

> [FN 3:] Because the prosecutor elected to link counts 1 and 3 to the victim at specific ages, we review whether substantial evidence supports the convictions on those counts based exclusively on the offenses as charged and argued; otherwise, "we may only be finding sufficient evidence to support a nonunanimous verdict." (*People v. Brown* (2017) 11 Cal.App.5th 332, 341-342.)

> During her direct examination at trial, the victim initially testified she did not begin orally copulating the defendant until she was nine years old. Later, still during direct examination, she testified it started when

she was nine or ten years old.   But Detective Morris—who interviewed the victim the day that she reported the crimes—testified the victim reported that she began orally copulating defendant when she was seven years old, about to turn eight.   The victim further reported to Detective Morris that when she was nine years old, and after her family moved to another location in Contra Costa County, the oral copulation increased in frequency.   Detective Morris testified she used open-ended questions so as not to lead the victim during the interview, which she recorded.

Defendant now argues there was insufficient evidence to support the victim orally copulated him when she was seven or eight years old.   He contends the only evidence supporting the counts is the victim's pre-trial statement to Detective Morris, which the victim's trial testimony "refuted."[FN 4]   As defendant acknowledges, however, prior inconsistent statements can be sufficient to support an offense. ([*People v. Brown* (1984)] 150 Cal.App.3d [968] at pp. 972-973.)   The fact that the victim testified inconsistently with her pretrial statement did not preclude the jury from crediting it as independent substantive evidence of guilt. (*See  People v. Maury* (2003) 30 Cal.4th 342, 403 ["Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends"].)

[FN 4:] Defendant claims the SART nurse who testified confirmed the victim's trial testimony.  This, however, is unsupported.  The nurse testified the victim disclosed she was 14 years old and had been sexually abused by her father for seven years.  At one point, the victim told the nurse that defendant started when she was nine years old, but the victim provided no description about what exactly defendant started when she was nine.  The nurse never testified that the victim stated she began orally copulating defendant when she was nine.

Nevertheless, defendant contends the victim's pre-trial statement constitutes insufficient evidence because: the victim was 16 years old at trial; her trial testimony was sworn whereas her pre-trial statement was not; and when the victim spoke with Detective Morris, she had just revealed the sexual abuse for the first time and was emotional and nervous.[FN 5]  These circumstances, however, concern evidentiary weight or credibility, and we cannot reweigh evidence or make credibility determinations.  (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.)  The question before us is simply whether the convictions are supported by "substantial" evidence, i.e., evidence that is reasonable, credible, and of solid value.  ([*People v. Ghobrial* (2018)] 5 Cal.5th [250] at p. 277.)

[FN 5:] With regard to defendant's argument that the victim was emotional and nervous when she spoke with Detective Morris, it is notable that Detective Morris testified that the victim, while nervous, was not crying during their interview and that she started to calm down and open up after initially coming in.  Furthermore, the trial transcript supports the victim was also emotional when she testified at trial—she had never been in a courtroom before, and it was easier for her to talk to Detective Morris than to testify in front of her father.

At one point on the stand, the victim acknowledged she was visibly shaking, wanted to leave, and was uncomfortable. During sentencing, the victim was absent. The trial judge indicated that he was unsurprised and observed that the victim "barely got through the court proceedings."

We conclude the victim's pre-trial statement, considered in light of the other evidence that defendant abused the victim for years beginning when she was seven years old, is evidence that is reasonable, credible, and of solid value to support the convictions for counts 1 and 3. The victim made her pre-trial statement upon first disclosing the abuse more than a year before trial and closer in time to the very crimes reported. Detective Morris testified she used only open-ended questions when interviewing the victim so as not to lead her. At trial, the victim indicated she told the truth when speaking to Detective Morris.

Further, contrary to defendant's claim that, at trial, the victim had a "clear recollection" of when the differing acts of abuse began, the record actually reflects the victim wavered on the stand considerably regarding when the differing acts of abuse began. For instance, the victim initially testified oral copulation began when she was nine years old, later changing that to nine or ten, and then, when pressed by defense counsel, agreed it could have begun as late as when she was 11.[FN 6] Likewise, the victim initially testified that the touching began when she was "seven, about to be eight," and intercourse began when she was 10 or 11 years old, but when pressed by defense counsel, the victim agreed that defendant only started touching her when she was eight or nine, and intercourse could have begun as late as when she was 13. Then, during redirect examination, the prosecutor asked the victim about her pretrial statement that intercourse began when she was nine years old, and the victim said that was when she remembered it starting. The victim also testified she was simply testifying from the best of her memory. There is no similar evidence the victim wavered as to the age oral copulation or other types of abuse began when speaking with the detective upon initially reporting the crimes.

[FN 6:] Arguably, the victim also showed some uncertainty at trial as to when oral copulation began when she testified that it began after her family moved to another location in Contra Costa County when she was in the third grade. She testified that she was eight years old for all but a month in the third grade, but she could not remember how old she was when her family moved. Notably, during her pre-trial interview with Detective Morris, the victim said she was nine when the family moved and the oral copulation increased in frequency after the move.

Considering the foregoing, along with the other evidence that defendant abused the victim for years beginning when she was seven years old, the jury could reasonably have credited the victim's pre-trial statement to the detective regarding the age oral copulation began. We cannot conclude that the evidence was insufficient or that a reasonable trier of fact could not find defendant guilty beyond a reasonable doubt. We thus reject defendant's claim of insufficient evidence supporting counts 1 and 3.[FN 7]

1

2

3

4

> [FN 7:] Generally, "unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction."  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)  Here, defendant does not contend it was physically impossible or inherently improbable that the victim began orally copulating defendant when she was seven years old, and there is nothing in the record that suggests such impossibility or improbability.

5    *Ortiz-Bravo*, 2020 WL 2504051, at *3-4 (brackets added and footnotes in original).

6         As mentioned above, petitioner argued his insufficiency of the evidence claim on direct

7    appeal, and the state appellate court rejected it upon properly presuming that the jury resolved the

8    conflict at issue—regarding how old the victim was when petitioner first began orally copulating

9    her—in favor of the prosecution, and deferred to that resolution.  *See Jackson*, 443 U.S. at 326.

10   As the state appellate court pointed out, the jury considered the victim's pre-trial statement—

11   that she was seven years old when she began orally copulating defendant—along with "evidence

12   that defendant abused the victim for years beginning when she was seven years old" and thus

13   could reasonably have credited the victim's pre-trial statement to the detective regarding the age

14   oral copulation began.  *Ortiz-Bravo*, 2020 WL 2504051, at *4.  A jury's credibility determinations

15   are entitled to near-total deference.  *See Bruce*, 376 F.3d at 957.  Therefore, the jury's

16   determination that the victim's memory when she first reported the molestations to the police was

17   more reliable than when she later testified at trial is entitled to such "near-total" deference.  *See id.*

18   Simply because petitioner disagrees with that determination is not enough to satisfy his burden on

19   federal habeas.  *See Johnson*, 566 U.S. at 651 (insufficient evidence claims are subject to two

20   layers of judicial deference on federal habeas, and a federal court may not overrule a state court's

21   rejection of such a claim simply because it disagrees with the state court).

22        Viewing the aforementioned evidence in the light most favorable to the prosecution, a

23   rational trier of fact could have found that, based on the totality of the circumstances, the victim's

24   statements to police that the oral copulation occurred when she was seven years old was sufficient

25   evidence to support the jury's verdicts on counts 1 and 3.

26                    **b.      Counts 22 and 24**

27        The state appellate court stated as follows in rejecting petitioner's insufficiency of the

28   evidence claim as to counts 22 and 24:

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

> Counts 21 and 22 of the information charged defendant with aggravated sexual assault of a child by rape (§ 269, subd. (a)(1)), and counts 23 and 24 charged him with aggravated sexual assault of a child by oral copulation (§ 269, subd. (a)(4)). The information alleged these counts occurred when the victim was 13 years old. Defendant now contends there was insufficient evidence to support he committed more than one act of sexual intercourse or oral copulation when the victim was 13 years old, therefore the convictions for counts 22 and 24 must be reversed. He argues the victim was never asked whether oral copulation or sex occurred multiple times when she was 13 years old, and she did not specifically testify they occurred more than once when she was 13. This is meritless.
>
> The victim testified that defendant made her orally copulate and have sexual intercourse with him countless times over the years. At various times the prosecutor specifically asked, and the victim affirmed, that oral copulation occurred multiple times when she was 9, 10, 11, 12, and 14 years old, and intercourse occurred multiple times when she was 10, 11, 12, and 14 years old. Although the prosecutor did not specifically ask the victim whether oral copulation and intercourse occurred multiple times when she was 13 years old, it is manifestly reasonable to infer that defendant engaged more than once in each such act when she was 13 years old given the evidence that he engaged in these acts multiple times before and after the victim was 13. Also supporting this inference was the evidence that defendant lived with the victim throughout the time he molested her; the victim's testimony that the longest she could stave him off was about a week; and the testimony of the SART nurse that after providing a history of acts of intercourse and oral copulation, the victim said, "He made me do it every week when I didn't want to."
>
> Viewing the evidence in the light most favorable to the judgment and presuming the existence of every fact the trier could reasonably deduce from the evidence, we conclude substantial evidence supports counts 22 and 24. ([*People v. Zamudio* (2008)] 43 Cal.4th [327] at p. 357.)

*Ortiz-Bravo*, 2020 WL 2504051, at *4-5 (brackets added).

The state appellate court reasonably determined that the jury heard all the evidence and as a rational trier of fact could find petitioner guilty of the following counts, which were alleged to have occurred when the victim was 13 years old: aggravated sexual assault of a child by rape (count 22) and aggravated sexual assault of a child by oral copulation (count 24). *See id.* The prosecution presented evidence with respect to the acts that occurred when the victim was 13 (at the time of the offenses) through the victim's testimony:

> Prosecutor: At age 13, was he touching your breasts and vagina?
>
> Doe: Yes.

11

> Prosecutor: At age 13, did he have you put your mouth on his penis?
>
> Doe: Yes.
>
> Prosecutor: At age 13, was he having you come into his bedroom to have sex with you.
>
> Doe: Yes.

2RT 126.  The victim testified that the oral copulation occurred when she was 9, 10, 11, 12, 13, and 14 years old, and that the intercourse occurred when she was 10, 11, 12, 13, and 14 years old. 2RT 124-127.  As the state appellate court noted, while the prosecutor did not specifically ask the victim if the acts of oral copulation and intercourse occurred more than once when she was 13 years old, there was sufficient evidence from which the jury could infer that they did.  2RT 124-127.  In response to the prosecutor's specific inquiry as to the years before and after she was 13, the victim affirmed that the acts occurred multiple times each year.  2RT 125-127.  The record also shows that the victim testified that the most she could hold petitioner off was about a week. 2RT 133.  Moreover, the victim, who was 14 at the time of the physical examination after she reported the molestation, told the SART nurse that the acts "had been going on for about 7 years" and occurred "every week."  2RT 185, 191-192.  Additionally, petitioner was still living with her at Bay Point when she was 13.  2 RT 149-150.  And there was no evidence in the record that petitioner changed his behavior or was thwarted in his molestations of her that year.  *See* 2RT 117-127.  The aforementioned evidence constitutes "substantial evidence" from which a reasonable trier of fact could find that he committed more than one act of sexual intercourse or oral copulation when the victim was 13 years old.  The state appellate court applied the appropriate deference to the jury's findings, and petitioner has not shown that its conclusion was objectively unreasonable.  *See Johnson*, 566 U.S. at 655-56 (*Jackson*'s extremely deferential standard on federal habeas does not permit a "fine-grained factual parsing;" rather, the only question is "whether that finding was so insupportable as to fall below the threshold of bare rationality").

### c.    Counts 2, 4, 13 through 25, 27, 29, 31, 33, and 34

Finally, petitioner claims that there was insufficient evidence that he committed counts 2, 4, 13-25, 27, 29, 31, and 33-34 by means of force, fear, violence, duress, threat or menace.  Dkt. 1 at 28-47.  The state appellate court gave the following background and rejected the claim as

United States District Court
Northern District of California

follows:

> The information charged defendant with forcible lewd acts upon a child under the age of 14 (§ 288, subd. (b)(1), counts 2, 4; aggravated sexual assault of a child under 14 by rape in violation of section 261, subdivision (a)(2) and (6) (§ 269, subd. (a)(1), counts 13, 14, 17, 18, 21, 22); aggravated sexual assault of a child under 14 by oral copulation in violation of subdivisions (c)(2), (c)(3), and (d), of former section 288a (§ 269, subd. (a)(4), counts 15, 16, 19, 20, 23, 24); forcible rape of a minor over 14 (§ 261, subd. (a)(2), counts 25, 27, 33); forcible oral copulation of a minor over 14 (§ 288a, subd. (c)(2)(C), counts 29 and 31); and forcible sexual penetration of a minor over 14 (§ 289, subd. (a)(1)(C), count 34). These offenses require that a defendant commit the charged acts by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on another person.

> Defendant presently argues there was insufficient evidence that he used force, violence, duress, menace or fear of immediate and unlawful bodily injury to accomplish the charged acts. We disagree, as the record discloses substantial evidence of duress.

> In the context of lewd acts in violation of section 288, forcible oral copulation in violation of section 288a, and forcible acts of sexual penetration in violation of section 289, "duress" means "'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.'" (*People v. Leal* (2004) 33 Cal.4th 999, 1004-1005 (*Leal*); CALCRIM Nos. 1015, 1045, 1111.) In the context of forcible rape, section 261 defines "duress" in the same manner, except that it omits the term "hardship" from the definition. (§ 261, subd. (b); *Leal*, at p. 1007 ["deletion of the term 'hardship' from the definition of 'duress' applies only to the rape and spousal rape statutes"].) In the context of aggravated sexual assault of a child in violation of section 269, "duress" is defined as it is in the underlying charged sexual offense. (See CALCRIM No. 1123 ["To decide whether the defendant committed <insert sex offense specified in Pen. Code, § 269(a)(1)-(5)>, please refer to the separate instructions . . . on that crime"].)

> Regarding all the crimes at issue, the factfinder determines the existence of duress by looking at the totality of the circumstances, such as the victim's age and relationship to the defendant. (§ 261, subd. (b); CALCRIM Nos. 1015, 1045, 1111.) Other considerations include "the position of dominance and authority of the defendant and his continuous exploitations of the victim" (*People v. Cardenas* (1994) 21 Cal.App.4th 927, 940), and whether the defendant made threats of harm to the victim, or physically controlled the victim when the victim tried to resist (*People v. Cochran* (2002) 103 Cal.App.4th 8, 14; *People v. Sanchez* (1989) 208 Cal.App.3d 721, 748). "The very nature of duress is psychological coercion" (*Cochran*, at p. 15), but "[d]uress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat.'" (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1321.)

"[A]s a factual matter, when the victim is . . . young . . . and is molested by her father in the family home, in all but the rarest cases duress will be present." (*Cochran*, at p. 16, fn. 6.)

In this case, defendant is the victim's father. He is more than two decades older than her, and he continuously molested her over a seven-year period beginning when she was only seven years old. The molestation occurred in the family home where defendant and the victim lived together, and only when her mother was at work. Moreover, on numerous occasions, defendant molested her in his bedroom with the door locked. These circumstances bear upon the victim's susceptibility to being manipulated and coerced by defendant.

There was ample evidence that the victim engaged in the sex acts because of express or implied threats of consequences for disobeying defendant. The victim testified that while growing up, she was punished by her parents for disobedience. Between the ages of seven to twelve, she let defendant molest her because she did not want to disobey him. When the molestation occurred in her parents' bedroom when she was seven to twelve years old, she did not feel she could leave because the doors were locked and because she "didn't know how he would react." The victim was also afraid to tell anyone during these ages because she did not know how he would react and thought he would get mad and take things away from her. When asked why she went to her parents' bedroom during the time period when defendant was having intercourse with her (beginning when she was around 10 or 11 years old), she said she had to obey otherwise she would get punished. If she said no to intercourse, defendant would get mad and take her cell phone away. And sometimes when she declined, he would tell her to do other sex acts and threaten to punish her if she refused. Defendant also told the victim her refusals just made him want her more, which implied that protestation would simply intensify the abuse. Additionally, during the pretext call defendant doggedly pressured the victim to continue engaging in sex acts with him while she repeatedly objected. It was only after she acquiesced that defendant expressed affection towards her. Thus, defendant's affection, or lack thereof, appeared contingent on her continued submission.

As to counts 33 and 34, concerning the last incident of molestation days before the victim reported the crimes, text messaging evidence showed the victim tried to avoid defendant's demand to come to him. Defendant responded by saying things like, "I'm not playing," "[h]urry up or I'll come for you," and "[y]ou want me to get mad?" These text messages supported a finding that defendant committed counts 33 and 34 by threats of force, hardship, and retribution.

There was also evidence that the victim would not have performed or submitted to the sex acts but for the foregoing threats. The victim was only seven years old when the molestation began. She described being uncomfortable by the touching, and uncomfortable and disgusted by the oral copulation. She did not know what oral copulation was, and so defendant initiated it by grabbing her by her head, putting it on top of his penis, and showing her what to do. The victim disliked intercourse so much that she would feel

uncomfortable but relieved when she could avoid it by touching defendant or orally copulating him instead. She described intercourse as physically painful and causing bleeding when it first started happening. She also testified that when the two were together in defendant's bedroom and defendant would lock the door, she felt uncomfortable because she knew something "bad" was going to happen.

The evidence also showed that the victim felt resistance was futile. For example, after the aforementioned text message conversation, the victim ultimately went to defendant's bedroom because she "knew that it was going to happen whether [she] want[ed] it or not." The victim testified she would sometimes ask defendant to stop having sex with her and sometimes he would stop, but sometimes he would not; when he would stop, he would just do it again within days or a week. This made her feel like she had no "opinion."

Defendant makes various claims that we disagree with or find irrelevant. Defendant argues there was no duress because the victim testified she thought his abusive conduct was normal until she was 12 years old and she participated in the sex acts because she did not want to hurt or disappoint her father. But such testimony did not establish an absence of duress. And even if the victim's testimony showed different reasons for her submission to the abuse, duress is not vitiated because a victim has multiple motivations. (*People v. Wilkerson* (1992) 6 Cal.App.4th 1571, 1580 ["A person, particularly a child, might act from dual motivations—to receive a reward and to avoid harm. As long as the total circumstances support an inference that the victims' participation was impelled, at least partly, by an implied threat, we do not think the factual basis is eliminated by evidence of other motivating factors"].)

In connection with the foregoing argument, defendant asserts that the victim "unequivocally testified" she did not fear him, pointing to a part of the record where the victim responded "[y]eah" to defense counsel's leading question whether, instead of fearing to refuse defendant, she just did not want to disappoint him. This response, however, did little if anything to undermine the victim's other testimony which established her fear of him, and at best it presented a credibility issue. Moreover, it is settled that "duress is objective in nature and not dependent on the response exhibited by a particular victim." (*People v. Soto* (2011) 51 Cal.4th 229, 246.)

Defendant next asserts he never actually physically harmed the victim and never threatened to do so. He also claims he never held her down or told her not to tell anyone, and never told her the family would suffer if she told. A finding of duress, however, is not dependent on evidence of these specific types of threats or circumstances. Instead, the finding properly turns on a consideration of the totality of the circumstances, including evidence of other types of threats by the defendant, the victim's age, the defendant's position of dominance and authority, and the defendant's continuous exploitations of the victim. (§ 261, subd. (b); see *People v. Cardenas*, *supra*, 21 Cal.App.4th at p. 940; CALCRIM Nos. 1015, 1045, 1111.)

Finally, defendant argues that "a threat to take away a teenager's

phone does not amount to a duress." But defendant cites no authority on point, and again, what constitutes duress was a question of fact for the jury to determine based on the totality of the circumstances. (See, e.g., *Leal*, *supra*, 33 Cal.4th at p. 1010.) Here, the threat to take away the victim's phone was not the only threat in evidence. Indeed, the record is replete with other evidence of defendant's express and implied threats of punishment or consequence for disobedience.

In sum, there was substantial evidence from which the jury could reasonably have concluded defendant committed the charged acts by threats of force or retribution as to the counts based on rape (counts 13, 14, 17, 18, 21, 22, 25, 27, 33), and by threats of force, hardship, or retribution as to the remaining counts (counts 2, 4, 15, 16, 19, 20, 23, 24, 29, 31, 34). Given this conclusion, we need not and do not discuss whether defendant committed the charged acts by other means, such as by force.

*Ortiz-Bravo*, 2020 WL 2504051, at *5-7 (brackets added).

First of all, the state appellate court's determination as to what type of evidence satisfies the duress element under state law may not be revisited on federal habeas. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law."). Even if such a determination was reviewable, the state appellate court's conclusion was reasonable. As delineated by the state appellate court, there was substantial evidence that the victim submitted to the acts under duress. *Ortiz-Bravo*, 2020 WL 2504051, at *5-7.

The California courts define "duress" as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." *People v. Schultz*, 2 Cal. App. 4th 999, 1005 (1992). And as the state appellate court explained above, the totality of the circumstances are considered, including the victim's age, relationship to the defendant, the position of dominance and authority of the defendant, and his continuous exploitations of the victim. *See Ortiz-Bravo*, 2020 WL 2504051, at *5. The state appellate court also considered "whether the defendant made threats of harm to the victim, or physically controlled the victim when the victim tried to resist." *Id.* (citing *People v. Cochran*, 103 Cal. App. 4th 8, 14 (2002); *People v. Sanchez*, 208 Cal. App. 3d 721, 748 (1989)). Specifically, the state appellate court pointed out as follows: "[A]s a factual

United States District Court
Northern District of California

matter, when the victim is . . . young . . . and is molested by her father in the family home, in all but the rarest cases duress will be present." *Id.* (quoting *Cochran*, 103 Cal. App. 4th at 16, fn. 6).

The state appellate court noted that the record showed that defendant continuously molested his daughter over a seven-year period beginning when she was only seven years old and that the molestation occurred in their family home, specifically in defendant's bedroom with the door locked. *Id.* at *6. There was "ample evidence that the victim engaged in the sex acts because of express or implied threats of consequences for disobeying [petitioner]." *Id.* When the victim suffered molestation by petitioner when she was 7 to 12, she did not feel that she could leave because the doors were locked and she "didn't know how [petitioner] would react." *Id.* The victim was afraid to tell anyone about the sexual abuse because she did not know how petitioner would react and thought he would get mad and take things away from her. *Id.* During the time when petitioner was having intercourse with her beginning when she was 10 or 11 years old, she said she had to obey or feared punishment. *Id.* All of the sexual abuse was against her will. She never consented to it or initiated sexual intercourse with petitioner. The state appellate court also pointed out that although the victim did not describe specific acts of force such as holding her down, a finding of duress was "not dependent on evidence of these specific types of threats or circumstances." *Id.* at *7. Thus, the aforementioned evidence shows that petitioner was able to perform acts which he otherwise could not have performed, and the victim acquiesced to acts, which she otherwise would not have submitted to, because of implied threats of force from petitioner.

Viewing the aforementioned evidence in the light most favorable to the prosecution, a rational trier of fact could have found that, based on the totality of the circumstances, the victim's acquiescence was due at least in part to an implied threat of force from petitioner, which shows there was sufficient evidence of duress. Thus, the state appellate court's decision was reasonable in rejecting the sufficiency-of-the-evidence challenge to a finding of duress and concluding that their existed "substantial evidence from which the jury could reasonably have concluded [petitioner] committed the charged acts by threats of force or retribution as to the counts based on rape (counts 13, 14, 17, 18, 21, 22, 25, 27, 33), and by threats of force, hardship, or retribution as

to the remaining counts (counts 2, 4, 15, 16, 19, 20, 23, 24, 29, 31, 34)."[3]  *Id.*  Accordingly, the state appellate court's denial of this claim was not an unreasonable application of *Jackson* and *Winship*.  This claim is DENIED.

### d.    Summary

In sum, the state appellate court's decision was reasonable in rejecting petitioner's sufficiency of the evidence challenges and concluding that any rational trier of fact could have found him guilty beyond a reasonable doubt on counts 1-4, 13-27, 29, 31, and 33-34.  Accordingly, the state appellate court's denial of this claim was not an unreasonable application of *Jackson and Winship*.  *Juan H.*, 408 F.3d. at 1275 (citing 28 U.S.C. § 2254(d)(1)).  Therefore, this insufficiency of the evidence claim is DENIED.

### B.    Consecutive Sentencing

Petitioner contends that the trial court erred at the original sentencing hearing in imposing consecutive terms on counts 1, 3, and 7-12, based on its mistaken belief that consecutive terms were mandatory under state law.  Dkt. 1 at 5, 48-55.

The California Court of Appeal agreed with petitioner that consecutive terms were not mandatory, and remanded to the trial court so that it could exercise its discretion and impose either concurrent or consecutive terms on counts 1, 3, and 7-12, stating as follows:

> """"Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]" [Citation.] Where . . . a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination.'" ([*People v. Leon* (2016)] 243 Cal.App.4th [1003] at p. 1023.)  Generally, under section 669, a trial court has discretion to determine whether to impose sentences consecutively or concurrently. (*Leon*, at p. 1025.)  While there are various statutory exceptions that require consecutive sentencing, the People's appellate briefing fails to point to any applicable statute requiring consecutive sentences for the convictions at issue.  Accordingly, we conclude the

---

[3] The state appellate court also noted that "[g]iven the conclusion [the court] need[ed] not and d[id] not discuss whether [petitioner] committed the charged acts by other means, such as by force." *Ortiz-Bravo*, 2020 WL 2504051, at *5 (brackets added).  Similarly, this Court has found that sufficient evidence existed for a rational jury to have concluded that petitioner committed counts 2, 4, 13-25, 27, 29, 31, and 33-34 by means of duress, it need not address petitioner's alternative claims relating to whether sufficient evidence existed that petitioner committed the aforementioned counts by any other means.

United States District Court
Northern District of California

court erred in concluding it had no discretion to impose consecutive or concurrent sentences on defendant's section 288.7 convictions.

The remaining question is whether "'the record shows that the trial court would not have exercised its discretion even if it believed it could do so.'" (*People v. Gamble* (2008) 164 Cal.App.4th 891, 901.) The People urge a remand is unnecessary given the trial court's statements at the sentencing hearing. In brief, the court indicated it would not impose mitigated sentences on the determinate terms due to the circumstances and impact of the crimes and expressed its belief that defendant should remain imprisoned for the remainder of his life. That said, the court stated it was sympathetic to defendant's argument concerning the length of the consecutive indeterminate terms, while showing no awareness of its discretion to impose any concurrent sentences. Since the record does not conclusively establish what the court would have done had it known about its discretion, we conclude, out of an abundance of caution, that defendant is entitled to relief. (*Leon*, *supra*, 243 Cal.App.4th at p. 1026.) We will order a conditional reversal and limited remand to give the court an opportunity to exercise its sentencing discretion under section 669 as to counts 1, 3, and 7 through 12. (*Ibid.*)

*Ortiz-Bravo*, 2020 WL 2504051, at *8 (brackets added).

On remand, the trial court exercised its discretion and imposed consecutive sentences. Dkt. 10 at 4. Accordingly, because the state appellate court already granted petitioner relief on his claim, his claim is moot on federal habeas.

Even if this claim was not moot, it does not state a cognizable claim for federal habeas relief because petitioner's claim asserts only an error of state law. As mentioned above, habeas relief does not lie for errors of state law. *See Estelle*, 502 U.S. at 67; *see also Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (federal habeas relief "unavailable for alleged error in the interpretation or application of state law"). The Ninth Circuit has repeatedly refused to consider errors in the application of state sentencing law on federal habeas. *See, e.g.*, *Beaty v. Stewart*, 303 F.3d 975, 986 (9th Cir. 2002) (claim that state court erred under state law in imposing consecutive sentences is not cognizable on federal habeas); *Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (alleged abuse of discretion by state court in imposing consecutive sentences cannot form the basis for federal habeas relief); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507-08 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus."). Moreover, this Court must defer to the state appellate court's interpretation and application of California law

United States District Court
Northern District of California

concerning the propriety of petitioner's sentence under California law. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). As the state courts resolved this state law issue, this federal court may not disrupt that ruling. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law"). Accordingly, because the state appellate court's determination was neither contrary to, nor an unreasonable application of established Supreme Court precedent, petitioner's claim relating to consecutive sentencing fails. Therefore, this claim is DENIED.[4]

### C.   Cruel and Unusual Punishment

#### 1.   Background

Petitioner contends his sentence was a cruel and unusual punishment, violating his rights established by the Eighth Amendment. Dkt. 1 at 5, 58-62.

#### 2.   Applicable Law

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). The Eighth Amendment contains a "narrow" proportionality principle. *Graham v. Florida*, 560 U.S. 48, 59-60 (2010). This principle "'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Id.* "[O]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences will be exceedingly rare." *Solem*, 463 U.S. at 289-90 (citation and quotation marks omitted) (emphasis in original); *see also Crosby v. Schwartz*, 678 F.3d 784, 795 (9th Cir. 2012) ("Circumstances satisfying the gross disproportionality principle are rare and extreme, and constitutional violations on that ground are 'only for the extraordinary case.'") (citing *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003)). In

---

[4] Petitioner does not challenge the trial court's determination on remand to impose consecutive sentences, *see* Dkt. 1 at 5, 48, and any such claim would be unexhausted, in addition to raising only a state law claim, which is not cognizable on federal habeas, *see Estelle*, 502 U.S. at 67.

United States District Court
Northern District of California

analyzing a disproportionality challenge to a specific sentence, the court "considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Graham*, 560 U.S. at 59.  Only extreme sentences that are grossly disproportionate to the crime violate the Eighth Amendment.  *United States v. Carr*, 56 F.3d 38, 39 (9th Cir. 1995).

For the purposes of review under 28 U.S.C. § 2254(d)(1), it is clearly established that "[a] gross disproportionality principle is applicable to sentences for terms of years."  *Andrade*, 538 U.S. at 72; *Gonzalez v. Duncan*, 551 F.3d 875, 882 (9th Cir. 2008).  Prior to *Graham*, but after *Andrade* and *Ewing v. California*, 538 U.S. 11 (2003), the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' [AEDPA] framework is the gross disproportionality principle, the precise contours of which are unclear and which is applicable only in the "'exceedingly rare' and 'extreme' case."  *Norris v. Morgan*, 622 F.3d 1276, 1286 (9th Cir. 2010) (quoting *Andrade*, 538 U.S. at 72); *see Gonzalez*, 551 F.3d at 882 ("The Supreme Court's Eighth Amendment jurisprudence establishes that no penalty is *per se* constitutional, and that successful challenges to the proportionality of particular sentences are exceedingly rare and reserved only for the extraordinary case.") (internal quotation, brackets, and citation omitted).  Thus, at a minimum, prior to *Graham* but after *Andrade* and *Ewing*, "it was clearly established . . . that in applying gross disproportionality principle courts must objectively measure the severity of a defendant's sentence in light of the crimes he committed."  *Norris*, 622 F.3d at 1287.

### 3.    Analysis

The state appellate court rejected petitioner's claim that his sentence constituted cruel and unusual punishment, stating as follows:

> Defendant argues his sentence of 320 years to life plus 69 years and 8 months in prison constitutes cruel and unusual punishment.
>
> Citing principally to *Coker v. Georgia* (1977) 433 U.S. 584, defendant first contends his sentence serves no legitimate penological purpose and is therefore "excessive" under the Eighth Amendment.  On this score, he seems to argue that no human being could serve the entirety of such a lengthy sentence and that penological goals cannot be served after one's death.  Second, defendant relatedly contends his sentence is excessive precisely because no human being could survive to serve it.  For this contention he highlights the late Justice Mosk's view—as expressed in his sole concurrence in *People v. Deloza* (1998) 18 Cal.4th 585 and his own law review articles—that a sentence that is

United States District Court
Northern District of California

impossible for a human being to serve constitutes cruel and unusual punishment.[FN 8]   We review these claims de novo.   (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1474.)

[FN 8:]   The law review articles defendant cites are: Mosk, *State's Rights—and Wrongs* (1997) 72 N.Y.U. L.Rev. 552, and Mosk, *Nothing Succeeds Like Excess* (1993) 26 Loyola L.A. L.Rev. 981.

With regard to the first contention, "[v]alid penological goals include retribution, incapacitation, rehabilitation, and deterrence."   (*In re Nunez* (2009) 173 Cal.App.4th 709, 730.)   As defendant seems to acknowledge, his sentence is effectively a sentence of life without the possibility of parole.   (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383 (*Byrd*).)   Considering the record, including the gravity and cumulative nature of the crimes and their likely lifelong impact on the victim, the sentence defendant received plainly furthers these goals. (*Nunez*, at p. 730; *see also People v. Meeks* (2004) 123 Cal.App.4th 695, 709 ["California has recognized, and reasonably so, that sex offenders present a serious danger to society because of their tendency to repeat their sexual offenses"].)

As for defendant's second contention, neither Justice Mosk's concurring opinion in *Deloza* nor his law review articles have any precedential value.   (*Byrd*, *supra*, 89 Cal.App.4th at p. 1383.)   Indeed, courts have expressly declined to adopt Justice Mosk's view (*ibid.*) and have repeatedly upheld lengthy sentences for multiple sex crimes. (See, e.g., *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1222, 1230-1231 [135 years for multiple sex offense convictions involving multiple victims]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1130, 1134-1136 [indeterminate term of 375 years to life plus 53 year determinate term for 19 felony convictions arising from sexual assaults of three women]; *People v. Wallace* (1993) 14 Cal.App.4th 651, 657, 666-667 [283 years and 8 months for 46 felony offenses arising out of sexual assaults against seven victims]; *People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 531 [129 year sentence for 25 sex offense convictions against one victim].)   We will not embark on a different path here.

Finally, defendant makes an assertion in his reply brief that "no statute specifically authorizes life without possibility of parole for any of [his] offenses or for their sum total."   We decline to address this belated contention, which is undeveloped and unsupported by authority.   (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)   Furthermore, as defendant acknowledges, consecutive terms are permitted, indeed sometimes required, by statute.   (See §§ 269, subd. (c), 667.6, subd. (d), 669, subd. (a).)

In sum, we reject defendant's contentions that his sentence constitutes cruel and unusual punishment.

*Ortiz-Bravo*, 2020 WL 2504051, at *8-9 (brackets added and footnote in original).

        The state appellate court's rejection of this claim was not unreasonable because petitioner's

case is not one of those "extraordinary" cases that merits relief based on the alleged

disproportionality of his sentence. *See Gonzalez*, 551 F.3d at 882; *Norris*, 622 F.3d at 1286. The state appellate court reasonably concluded that petitioner's sentence of 320 years to life plus 69 years and eight months was not grossly disproportionate to his crimes. *See Coker v. Georgia*, 433 U.S. 584, 598 (1977) ("Rape is without doubt deserving of serious punishment"). The record shows that petitioner subjected his daughter to heinous sexual acts on a weekly basis from the time she was 7 until she was 14 years old. *See id.* at 597 ("Short of homicide, [rape] is the 'ultimate violation of self.' It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist.") (footnote omitted); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people"). As the state appellate court noted, "[c]onsidering the record, including the gravity and cumulative nature of the crimes and their likely lifelong impact on the victim," the sentence petitioner received plaintiff furthers "[v]alid penological goals includ[ing] retribution, incapacitation, rehabilitation, and deterrence." *Ortiz-Bravo*, 2020 WL 2504051, at *9 (brackets added); *see also Kennedy v. Louisiana*, 554 U.S. 407, 435 (2008) ("Rape has a permanent psychological, emotional, and sometimes physical impact on the child"). The state appellate court pointed out that courts have expressly declined to adopt "the late Justice Mosk's view" that "a sentence that is impossible for a human being to serve constitutes cruel and unusual punishment." *Ortiz-Bravo*, 2020 WL 2504051, at *8-9.

Accordingly, this Court is not persuaded that petitioner's case is one of the "exceedingly rare" and "extreme" cases where gross disproportionality is applicable and merits habeas relief. *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (mandatory sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine did not raise inference of gross disproportionality); *Norris*, 622 F.3d at 1292-96 (concluding that sentence of life without possibility of parole for conviction of first degree child molestation of 5-year-old girl, where touching was brief and over clothing, was not grossly disproportionate). Based on the foregoing, the state appellate court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable

determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).  Therefore, petitioner is DENIED habeas relief on his Eighth Amendment claim.

**V.      CERTIFICATE OF APPEALABILITY**

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find this Court's denial of petitioner's claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**VI.     CONCLUSION**

For the reasons outlined above, the Court orders as follows:

1.      All claims from the petition are DENIED, and a certificate of appealability will not issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2.      The Clerk of the Court shall terminate any pending motions and close the file.

3.      Steve Smith has been substituted as respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  *See supra* fn. 1.

IT IS SO ORDERED.

Dated:   4/5/2023

JUDGE YVONNE GONZALEZ ROGERS
United States District Judge